Plaintiff Pellant, the Illinois Municipal Retirement Fund at all, Defendant Pellouz. Arguably on behalf of Plaintiff Pellant, Attorney Mr. John R. Brennan. Arguably on behalf of Defendant Pellouz, Attorney Beth J. Clark. Mr. Semple. Good morning. Good morning. So the primary issue in this case is whether the IMRF's reclassification of the Village's Fire Department was lawful. In particular, was it lawful where there is no change in the law to precipitate this reclassification? There is no change in the Village's organization or operation of its Fire Department to precipitate this reclassification? Where the IMRF had knowingly classified the Village's Fire Department in a certain manner for over 50 years before suddenly reclassifying it? And where the Village has detrimentally relied on this fire classification for over 50 years? And it's the Village's position that the IMRF is without authority to reclassify the Fire Department under these circumstances. The case is interesting because I think it involves a balancing test between some pretty well-established case law over the extent of IMRF's authority and some issues of equitable fairness and detrimental reliance from the Village. And it involves some interpretation of regulatory language of the IMRF. I'll take just a few moments to recap the relevant facts. As I'm sure you know, the IMRF administers a pension for municipal employees and is governed by Article 7 of the Pension Code. By contrast, for full-time firefighters in communities over 5,000, they're governed by Article 4 of the Pension Code. In this case, the Village of Westmont joined IMRF as a member community in 1961. In 1961, the Village of Westmont had a fire department comprised of part-time firefighters, did not employ any full-time firefighters, and the Village of Westmont did not maintain a fire pension. The IMRF knew that at the time. And what the IMRF has is a system of rules and regulations to interpret and administer Article 7 of the Pension Code. It's called its Authorized Agent Manual, and it places municipal fire departments into various classifications. In this case, it placed the Village's fire department as Group 4 firefighters. It placed them as Group 4 firefighters, knowing they had only part-time firefighters and knowing they did not have a fire pension. That classification remained the same during the 60s, the 70s, the 80s, and into the early 1990s. At that point, the Village affirmatively reached out to IMRF and said, You know, our fire department is comprised of part-time firefighters. We don't have any full-time firefighters. We don't have a fire pension. We want to make sure this Group 4 firefighter classification is correct. And the reason is because we have some firefighter employees who work over 1,000 hours who ordinarily would participate in IMRF, but they're not because of this classification. And that was Mr. Sorbell's affidavit? Mr. Searle's affidavit, correct. Searle's. Sorry, another case. But regardless of that confusion, I'm sure Mr. Searle reached out because the policy or the classification was inconsistent with the pension code, correct? I think he was asked by the Village. He wanted to make sure it was correct, absolutely. So we're here today, and that classification is still inconsistent with the pension code, correct? I don't think so at all. Why not? Well, and that's a great question. I think that's the point. That's the point. Right. You have to read the language of this Group 4 classification in light of Article 7 of the pension code. And Article 7 clearly says that if you have municipal employees who work 1,000 hours or more, they have to participate in IMRF. But for some reason, IMRF has these separate classifications for fire departments. And one of the reasons, I guess, is because there is a separate fire pension fund for full-time firefighters. And when you look at the language of the Group 4 firefighter classification, if they meant to say, if you have established a fire pension, your part-time firefighters do not participate in IMRF, they would have said that. But they hadn't established a fire pension fund, had they? I'm sorry?  Westmont has never established a fire pension fund at any time during the 52 years that they had joined IMRF. IMRF knew they hadn't established a fire pension fund. And IMRF created this Group 4 firefighter classification. And the Group 4 firefighter classification, it doesn't simply say, if you have a fire pension, your firefighters who are part-time don't participate in IMRF. It goes on. But doesn't it say across the 5,000 population threshold? Well, it's interesting why that language is in there. And, of course, we didn't have the benefit of discovery because this was an administrative hearing and an appeal from that. But it says, you know, these were governmental units that were under 5,000 in population. At the time, they came under Social Security by entering into an agreement with the Social Security unit. And they had not established a fire pension fund by referendum at that time. They now have a population of 5,000 or more and or have formed a fire pension fund. Right. So either they're 5,000 and they have a fire pension fund or they're over 5,000 and they have not established a fire pension fund. And doesn't Westmont fit in there? Yeah. They're over 5,000 and they don't have a fire pension fund. They fit squarely within this Group 4 firefighter definition. And then it goes on to say that governmental entities in this classification, they're firefighters, whether they're part-time volunteers, et cetera, don't participate in IMRF. I think back to your question, does that classification violate state law? I don't think so. And I don't think it does because I think going back, and again, this is decades and decades, they created an exception for communities that were under 5,000 at the time they came under Social Security and viewed that as a reasonable exception to the requirements of the pension code that employees who work 1,000 hours or more have to participate in IMRF. The exception is for firefighters for these particular municipalities. And they've interpreted it this way for decades and decades and decades and decades. And suddenly, whether it's political pressures, pressures to make sure their fund balance is secure, whatever the reasons, they came back without any precipitating reason and said, aha, you don't have a fire pension. This is how we're interpreting our regulation, which is completely contrary to how they've interpreted it for decades and decades, even upon inquiry from the village. The village said, we don't have a fire pension. We have part-time firefighters. Where do we belong? Is this correct? And they looked at it and they said, yep, it's correct. If you don't change things, it's not going to change and it's in the writing. And we relied on that. How do you distinguish this case from Stevens versus the village of Oakbrook if this court decided? Well, factually different, and I think that dealt with, if I recall correctly, an attorney and the village saying, on their own, this employee is not going to participate in IMRF. We're viewing him as an exempt employee. And in this case, it's IMRF who has said, firefighters in this classification are exempt from IMRF participation, and that is how IMRF interpreted the pension statute. But what if their interpretation was wrong? Well, that's for you to decide. I don't think it was wrong because I think this court has to give deference to the way a pension fund like IMRF has interpreted its rules and regulations over the years. But if IMRF was wrong and it conflicts with the pension code, does the stop will apply for you? Well, clearly, if it violates state law, no, stop will not apply. However, again, for the reasons I said, I don't think it violates state law. We don't know, nor did IMRF ever bring out any reason why that language is in there. They just said, this language means as of year 2013, you have to have a fire pension. You have to participate in a fire pension fund. In reviewing the regulations, their classification, and looking at the statute, we give words that are plain and ordinary meaning, correct? For both the regulations and the statutes, correct. And the statute, under the statute, firefighters are municipal employees, correct? They are. They are. Yeah, they are. Right. And what's your argument regarding Vester versus DuPage County Election Commission that a stop will not apply where an agency regulation conflicts with the statute? Again, I don't think this conflicts with the statute. I concede your point. If you hold that this group for firefighter classification that's been in effect for well over 50 years conflicts with the statute and is void as to any municipalities that don't have fire pension funds, I would agree with you a stop will not apply. But I think this acts as a grandfathering clause of sorts for these communities that were under 5,000 at the time they came under Social Security, they formed the fire department, and now they're over 5,000 and they either have a pension or they don't. But in those cases, these communities are grandfathered. That's where Westmont fit. That's where they placed us. And that's how they've interpreted it for years. For whatever reason now, and it's not part of the record, but they decided to change their tune after 50-some years. Do we have authority to make that kind of a policy adjustment? Sure. Well, I think it's, is it a reasonable interpretation of this? Are you asking us to basically be policy makers? I think what the village is asking you to do is interpret this regulation in light of the language of Article 7 and in light of what you're entitled to do, years and years of interpretation by the administrative agency charged with enforcing it. I think you can reach the conclusion that this was a reasonable exception to the pension code. Not retroactive. I'm sorry? Not retroactive. Not to go back. Grandfathered them in. Well, I think that is the intent of this group for firefighter regulation is that, you know, for communities that were, again, under 5,000 at a certain point and they came under Social Security, yeah, they, to your point, were grandfathered or kind of a retroactive. But, again, because of the nature of this case, we don't know if, like, kind of know if it exists, legislative history, why they used that language they used, but clearly they used it and they used it for a reason. And there's some rational reason why they said and or have formed a fire pension. They anticipated that you may not have a fire pension and this is a valid exception to the pension code. So, what are you asking for? Well, IMRF reclassified the village to a newly created fire pension fund because we didn't fit into any, according to IMRF, any existing, did I say fire pension fund? I'm sorry. Firefighter classification. They claimed that the village didn't fit into any existing classification so they created a new one. We're asking to go back to the group for firefighter classification that we have been in for 53 years because we set up a fire department in reliance on this. In the words of the IMRF board when they heard our administrative argument, this is a multimillion dollar, will have a multimillion dollar impact on the village as far as pension obligations go. And going forward or a bill for the past? That's unknown. Certainly going forward. Absolutely going forward. It's up to the IMRF to decide, aha, we want to go back now and audit you. And theoretically this would only affect the employees who are working over a thousand hours a year. Correct. Okay. Counsel again, what is it that you're asking for? We are asking for you to overturn the decision of the circuit court and the IMRF board of trustees and return the village of Westmont to the group for firefighter classification. In that case, the village would continue its operations of having a part-time fire department with no fire pension, but its part-time firefighters would not participate in IMRF. All of its other part-time employees do participate in IMRF if they work over a thousand hours. Thank you, counsel. Thank you. We do have another opportunity to address this. Ms. Clark. May it please the court, counsel, Beth Janke-Clark on behalf of the Illinois Municipal Retirement Fund. I believe there's two issues that this case involves. And the first issue is, does the Illinois Pension Code require Westmont to enroll its part-time firefighters in IMRF if they work over a thousand hours per year? The second issue is whether IMRF is bound to prior classifications contained in its authorized agent manual, which is akin to its administrative rules, if those classifications are contrary to the pension code. IMRF believes that the pension code does require Westmont to enroll its part-time firefighters that work over a thousand hours a year. Westmont is an IMRF employer and has adopted the thousand-hour standard. All IMRF employers are required to enroll employees as defined by the pension code. And there is an exception in Section 7-109 of the pension code, that's subsection 2B, that states employee does not include persons who are designated by the governing body of a municipality in which a pension fund is required by law to be established for policemen and firemen, respectively as performing police and fire protection duties. So, if a pension fund is required by law to be established for firemen, any persons performing fire protection duties would not be considered employees for IMRF enrollment purposes. There is no dispute that Westmont's part-time firefighters do perform fire protection duties. However, Westmont believes that it is required by law to form a fire pension fund, and IMRF's position is Westmont is not required by law to form a fire pension fund. If you look at what is required by law means, Webster's Dictionary defines required as meaning to demand by virtue of a law. Does the law then require Westmont to form a fire pension fund? To find the answer to that question, you need to look to Article 4 of the pension code. Section 4101 states that in each municipality, as defined in Section 4103, the City Council or Board of Trustees, as the case may be, shall establish and administer a firefighter's pension fund as prescribed in this article. And if you go to Section 4103, that defines municipality as any city, township, village, or incorporated town of 5,000 or more but less than 500,000 inhabitants, and any fire protection district having full-time paid firefighters. Therefore, there's two things that are necessary to be required by law under Article 4 of the pension code to create a fire pension fund. That's over 5,000 in population and employing full-time firefighters. How do you describe or how do you explain the term and or have formed fire pensions? That term was in Group 4 previously. It's since been amended. I can't explain it. It does seem to indicate that it would mean you don't necessarily have to establish a fire pension fund. But if you read that Group 4 section out of the authorized agent manual, the second paragraph says, No firefighters volunteer part-time, etc., in these government units are covered by IMRF, even though they do not participate in your fire pension fund. In that sense, to me, it seems to imply the creation of a fire pension fund. That and or seems to be contradictory to that, but these rules aren't written by attorneys. They're written by IMRF staff. They are reviewed by IMRF attorneys, but I think it's just a mistake, unfortunately. Well, couldn't they have read it that way? And perhaps the individual who was advising them incorrectly had read it that way? The individual that they relied upon giving them information? Yes, they could have. And in fact, you know, the interesting situation is how this all came to light. Mr. Zemanek represented, IMRF and Westmont had a previous matter involving some full-time members of their fire department. They're the administrators, and Westmont had been going back and forth with the Department of Insurance as to whether or not these individuals were indeed firefighters, and therefore full-time, and do they have to create a fire pension fund? And Westmont had argued they're not firefighters, they're regular employees, they should be enrolled in IMRF. So Westmont came to our Benefit Review Committee, and we held a hearing on the full-time members, and IMRF Benefit Review Committee agreed that they weren't necessarily firefighters performing fire protection duties, and that they could remain enrolled in IMRF. It was during this hearing that IMRF discovered that Westmont took the position that it wasn't required by law to create a fire pension fund. So the question of whether they were required to create a fire pension fund has been something that's been an issue between Westmont and the Department of Insurance for some time, and there are letters in the record that support that Westmont had previously taken the position that they weren't required by law. And so that's kind of when this issue came up, and IMRF realized, hey, wait a sec, there's municipalities out there who only have part-time firefighters. They don't have any full-time firefighters, so they don't have a fire pension fund, and they're not enrolling their part-timers in IMRF. That's when this new Class 6 got created. And Westmont's not the only municipality that's in the new Class 6. There's actually 10. They've come from different groups. I think there were three that came from Group 4. Is your position that the Class 6 is prospective only or retroactive? We are applying it retroactively. The municipalities that are in Class 6 that we believe they're part-timers who work over 1,000 hours are required to be enrolled. They're getting the omitted service for the time going back. They're going to have to pay as well the employees, correct? Right. They pay the employee 4.5 percent. So let me ask you, how is this any different than the pension case that the Supreme Court recently decided where it's saying you can't, you know, you can't diminish your repair? But not only that, they look at it like this is a contract. When you entered into your position as a state employee, you basically entered into a contract. Therefore, your contract can't be changed. How can we change the contract now that these individuals entered into some years ago so midstream you're going to say to them, oh, by the way, we're going to go back and now you get this pension you have to pay into? We think that it's something that they should have been enrolled in back from their initial employment with Westmont. You know, there are circumstances where IMRF employers forget to enroll an individual and IMRF goes out and does an audit and finds out, wait a minute, this person, this employee has been working 1,000 hours, yet they haven't been enrolled. They're entitled to go back and have that time reported to IMRF. And they are required to be in, so they pay their 4.5%. Kind of like the Stevens case. I'm sorry? Kind of like the Stevens case. Kind of like the Stevens case. He was given omitted service for his time as a fire inspector. That's correct. And Stevens stands for the proposition that IMRF really can't deviate from the terms of the law. Our administrative rules are there. IMRF can promulgate them. However, IMRF only has the authority to promulgate rules that are in compliance with Article 7 of the pension code. It can't go beyond that. When you promulgate a rule that is contrary to the statute, what's the remedy? If the rule is contrary to the statute, the rule should be invalid. Right, but those who have relied on it, where is their remedy? If you look at the Bestrip case, there's no estoppel that would apply at all to IMRF because IMRF doesn't have the authority to change written state law by administrative rule. So your position is you have the authority to make rules, whether they are valid or invalid, let people rely on them, and then go, oops, this is contrary to statute, so we're going to go back retroactively and change something going back 35, 40 years? Well, you know, it's understandable that Westmont's upset. They're upset because, I mean, I can't even begin to imagine the amount of money that is due IMRF. Well, you know, the other point is that Westmont doesn't necessarily have to employ these individuals for 1,000 hours. But they have, so that's why I asked you. You're asking for this remedy retroactively, so there's years and years of multiple firefighters working over 1,000 hours a year. They will individually have to come up with some funds, and Westmont will have to pay back IMRF. That's correct. Based on an interpretation of your rule, which you promulgated and now say are a mistake, and your mistake leaves all the wronged parties with no remedy. And I don't see it as necessarily a mistake. I see it as IMRF wasn't aware that there were municipalities out there without any type of pension for their firefighters. Based on that reading of and or that created Group 4, right? Right. What about his argument over grandfathering clause? I don't think there is any type of grandfathering clause at IMRF. I mean, the pension code is the pension code. You're either entitled to a pension or you're not entitled to a pension. Can they elect to waive it? No. Meaning both the employee and the employer cannot waive it. Right, and as much as Westmont believes that IMRF's, you know, I think there's some language in their reply brief that says IMRF's just looking for the money. To me, that's not the case. Well, you could get it back. Okay. You're set up by statute to service the employees and the municipalities, whatever the circumstances are. If they're covered, they're covered. That's right. That's it. I guess my bottom line is what is your responsibility to ensure that your rules coincide with the statute? It seems like you can stand and just advocate any responsibility for your rules. We are a creature of statute, and there's – IMRF has made its best effort to explain a very difficult situation by grouping firefighters according to these now six groups. The interplay between Social Security and the pension code and municipalities' responsibility of whether their firefighters are enrolled or not enrolled. And so all of this grouping was just an attempt by IMRF to explain an already difficult situation. The fact that we didn't know that there was this group six out there, you know, it's unfortunate. But it is there. And the minute Westmont hires one full-time firefighter and has to create a fire pension fund, they don't have anybody in IMRF. Okay. Just to sum things up, you know, as far as the estoppel argument goes, I think the Vestrop case is pretty applicable here. There's a quote on page 384 that says – discussing about an agency's interpretive error and how it can't be given the force of law. And the court specifically says, an equally decisive ground for rejecting Vestrop's argument is that our following merits would be a concession that an administrative agency's mistaken interpretation of a state statute can preclude a court from enforcing that statute. Essentially, Vestrop would have us give an interpretive error the force of law and precedence over the law is enacted by the elected lawmakers of the state of Illinois. This is entirely unacceptable, especially because that interpretive error would cost the voters of the representative districts their opportunity to nominate a candidate of their choice. I think Vestrop is controlling. I don't think IMRF can be bound to its unfortunate misinterpretation or failure to recognize that there was this class six out there where there were municipalities with employees that qualified to be enrolled in IMRF that weren't being enrolled. And like I said, now we've got a class six with ten municipalities that have been designated. The majority of those have enrolled their part-time firefighters without any question. So we believe the statutory provisions are clear and Westmont's not required by law to create a fire pension fund and that IMRF is not stopped and we ask that this court uphold Judge Wheaton's decision in the lower court to remain the decision of the IMRF Benefit Review Committee. In order for the employees to be enrolled, they're going to have to pay into the IMRF, correct? They would pay for their omitted service. Going forward, what happens is there's an employer, an employee contribution. Going backwards. To purchase their omitted service, they would have to. What if they don't want to? They don't have to purchase that omitted service. They're only eligible forward. They won't have to purchase it. That's not going to say, so my question was asked, then they wouldn't be allowed to say, I'm not going to purchase it, therefore I don't want to participate. No, they have to participate here forward. If the employee doesn't participate, the village still has to pay for that omitted time, correct? The village wouldn't. It's not that the village isn't going to have to write a check to IMRF. What happens is their employer reserve will be charged for that amount and so the rate of their contribution may be impacted. Their ultimate employer contribution every year is determined by a number of things, but they have an employer reserve. And so IMRF isn't going to be coming to Westmont and saying, we need a check for X amount of dollars. It will be charged to their employer reserve and then their ultimate contribution rate will be impacted by that. And it's difficult to say by how much because we don't really have those numbers and know who would be enrolled. Thank you so much. Thank you. I really had an opportunity to respond. Thank you. We've heard words like we were unaware that the village did not have a pension. It was a mistake on IMRF's part. It's unfortunate. But the fact is they were aware because we told them and they affirmatively put the village firefighters into a certain classification. Years later, we told them again, this isn't a mistake. They knew what they were doing. They are a professional fund to administer a state statute. To now pull the rug out from underneath Westmont and say, we're going to change the way we interpreted our regulation. Well, the other way to look at it is Westmont's been dilatory as well. Because there are attorneys for the village can look at the same laws and say, you know what, with all due respect to IMRF, I think the law requires because our employees who are clearly municipal employees are working over 1,000 hours. It's interesting because we did look at that. And my predecessor, Pete Samus, did exactly that. Went to the assistant village manager, Mr. Searle, and said, here's what it says. Here's what their regulation says. In light of the statute, you should reach out to IMRF to make sure we're doing this properly. And that's what we did. So now to say we made a mistake and, oh, by the way, we're going to go back and charge the village for all these omitted years of service is absolutely unfair. Even if you're to rule in IMRF's favor, it can only be forward-looking, in my opinion, because Well, there's a lot of factors that are going to go into it, how many firefighters are going to decide to join. I don't know the numbers. Do you have the numbers? First of all, they don't get to decide to join. No, no, I know that. I'm talking about going forward. How many firefighters are there working over 1,000 hours? I don't know. It fluctuates from year to year. So the reserve will be taxed, but you're not going to get a bill for X number of dollars. It is a cost to the village, no matter how you look at it, if you go back retroactively. It's really impairing a right, an expectation, a right that the village had. Well, what about the firefighters working over 1,000 hours? You're talking about a right that they had that was not, I don't want to use the term ignored, but mistakenly they were entitled to that they weren't benefiting from all these years. That's another way to look at it. I guess so. I mean, these guys all work full-time for other departments and are enrolled in a fire pension, came to Westmont knowing here's the rules that the IMRF has established for the village, and they operated under those rules. They haven't been harmed. Their eyes were wide open. Did they have any expectation of a pension when they came to Westmont? Absolutely not. Their eyes were wide open. Otherwise, they would have been screaming and hollering for 53 years, why aren't we getting our IMRF pension? So the contract, if you will, that they entered into with the village of Westmont is you have no pension. Absolutely. That's why you're part-time and we're keeping you under the full-time hours because here's how the IMRF has set this up. And I question this regulation. And to my grandfathering argument, why do they go to the trouble to say when they created the group for firefighter classification that these were communities once upon a time under 5,000 in population that came into an agreement with the Social Security unit at that time and they didn't have a fire pension? And now why go to that trouble to include that language? Is that mere surplus? What happens if you were over 5,000 at the time you came under an agreement with Social Security? What's the difference? Well, they felt there was a difference. That's why they classified the village in that manner. Again, we don't have the benefit of discovery or legislative analysis to understand why they came up with that, but clearly they felt in interpreting Article 7 of the pension, there is an exception for communities that originally were under 5,000 that came under an agreement with Social Security and had not formed a pension. Thank you. Anything further, Justice Burkett? Counsel, thank you. Counsel, both, thank you very much for your very interesting argument today and your professionalism. We appreciate it. We will take this case under consideration and write a decision in due course. Our court is adjourned for the day. Thank you very much.